Davis, J.
The parties to these leases had the right to make any restrictions upon the mode of enjoying the leased property which they might agree upon, provided that such restrictions should not be contrary to public policy. The Round Lake Association v. Kellogg, 141 N. Y., 348. The circuit court found that each of the leases contained the following covenants by the lessee, viz.: “that he would use such premises for the purpose of a private dwelling or residence only, except on a special permit from the company,” and that he “during all meetings would be subject to the rules and regulations of said meeting.” It is also found as a fact in the cases that the plaintiff is a corporation having for its object the owning and holding of *198 land for the purpose of carrying on religious exercises and meetings on the same. In view of this object the defendants acquired their leaseholds, and in furtherance of this object the plaintiff exacted these restrictive covenants from the lessees. To state it in another form, the leases were given and received in furtherance of the purpose of the plaintiff’s existence, that is, to keep up religious meetings and literary entertainments and maintain summer homes for those who resorted to the place; and the defendants, in good faith, ought to be bound not only to the plaintiff but to the other lessees as-well, to carry out the common design. We can see nothing unreasonable in the covenants, and nothing in them contravening public policy. They are therefore valid and binding obligations, unless the plaintiff is estopped or must be held to have waived them. ,
To constitute a waiver it must fairly appear that there was an intention to waive the covenant right, and the waiver must be founded upon a consideration. Neither of these essential facts appears in the findings of the circuit court. Whether there was a waiver operating by estoppel depends upon the effect to be given to the finding that these defendants constructed their dwellings with the intention and purpose, not only of using the same for dwellings but also with the intention of renting rooms therein, and that plaintiff had notice of such construction and intention and of the actual renting of rooms, and made no objection thereto, and made no demand for payment during several years. It does not appear to us that the mere sufferance of the plaintiff, unaccompanied by any statement or conduct which misled the defendants, would work an estoppel. Indulgence to the defendants, whatever the motive, could not work *199 them any injury; nor could it confer upon them the right to commit a breach of their covenants. No “special permit from the company” was given; and the plaintiff did not represent to the defendants, or give them good reason to believe, that it would release its rights under the contract. Indeed, in the Dudley case the plaintiff notified the defendants during the construction of their building^ that they would be required to pay for the privileges of renting rooms for hire in their dwelling house, and on demand from the plaintiff payment was made regularly until the time when these lessees became refractory.
These cases, then, come up on the question whether the defendants have committed a breach of their covenants in the lease. It is insisted by the defendants that as they are not. restricted as to assignment' or under letting, by the leases, they may sub-let or assign as they see fit, even to the extent of renting all the rooms in the house to as many different tenants. This is no doubt true as an abstract proposition of law; but in these cases it is limited by the covenant that they shall use the property for the purposes of a private dwelling or residence only, except on special permit from the company. They may exercise their right to assign or sublet freely until they subject the property to uses other than that of a private dwelling or residence. The moment they do that they have broken the covenant, unless they have done it under a special permit from the company. Now have they subjected the property to a use different from that covenanted? For it is admitted by the defendants that they have rented rooms in their dwellings without permission from, and in defiance of, the company. The findings of the circuit court indicate that they have done this so systematically, and to such an ex *200 tent, as to amount to a business. Yet they insist that each house is still a dwelling house, or at least a collection of dwellings. “Each of such tenants,” says, the counsel for defendants, “used his apartments for the purposes of a private dwelling.” But the plain provision of the covenant is that the leased premises, shall be used for the purposes of a dwelling or residence only,» not for a number of dwellings. More than that, they are restricted to the use of it for a private dwelling or residence; and that is not a private dwelling or residence which is used in the business of renting rooms to lodgers or tenants.
A lodger is one avIio has the right to inhabit another man’s house. One who lives in a hired room or rooms in the house of another. 1 McAdam Landlord & Tenant, 619. Century Dictionary: A lodging house is a house where lodgings are let. Century Dictionary: “The distinction (between lodgers and tenants) may, in some cases, be fairly drawn, and may depend upon the character of the hiring, with reference sometimes to the business of the lessor and the presumed intention of the parties, as gathered from all the other surrounding circumstances of the particular case. The tenant is put into the exclusive possession of his rooms, while the boarder or lodger has merely the use of them without the actual or exclusive possession, which is in the lessor subject to such use.” 1 McAdam Landlord & Tenant, 621.
In Rose v. King, 49 Ohio St., 213, 227, this court, per Spear, J., adopted the following definition of a “tenementhouse:” “A building,the different rooms or parts of which are let for residence purposes by the possessor to others, as distinct tenements, so that each tenant, as to the room or rooms occupied by him, would sustain to the common landlord the same rela *201 tion that the tenant occupying a whole house, would to his landlord.” Now, while it is not necessary for our present purpose, to determine whether the use to which these dwellings were subjected was that of lodging houses or of tenement houses (and it was one or the other) it is manifest that it was not a use “for the purposes of a private dwelling or residence only.”
Under the cross-petition in error of the several defendants we are called on to review the finding of the circuit court that the written contract of lease with the defendants did not waive or abridge the right of plaintiff to charge' such uniform fees at the gate, at all times and to all persons. We have already said that the covenant by each of the lessees that he “during all meetings would be subject to the rules and regulations of said meeting,” was a lawful covenant; and that it was made in furtherance of the common design to maintain a summer resort and keep up religious services and literary entertainments. The collection of the gate fees was not an abridgment of the property rights of the defendants. It was a reasonable and voluntary concession on their part, when they acquired the leases to effectuate the object for which Linwood Park was created and maintained. It was a condition without which they could not have acquired the leaseholds and which they accepted. They ought not now to be heard to complain of if. We find no error in the dismissal of the cross-petitions.
If the defendants should be allowed to disregard these covenants it would speedily take the life of the enterprise by ta,king away its entire source of income. To restrain such an irreparable injury, the plaintiff *202 is in our opinion clearly entitled to an injunction against each of the defendants in these cases.

The judgments of the circuit court dismissing the petitions of plaintiff are 'reversed and judgment given for plaintiff in all the cases. The judgments of the circuit court dismissing the cross-petitions of defendants are affirmed.